IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
:
JOAN SECHLER-HOAR ET AL. : 3:17 CV 1968 (JAM)
:
v. :
:
TRUST U/W OF GLADYS G. HOART ET AL. : DATE: JANUARY 31, 2018
:
------------------------------------------------------x

## RULING ON SUPPLEMENTAL BRIEFING RELATED TO PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY

On November 22, 2017, plaintiff Joan Sechler-Hoar filed her complaint (Dkt. #1) against defendants Trust u/w of Gladys G. Hoart; Thomas C. Mackasek, as co-Trustee for Trust u/w of Gladys G. Hoart f/b/o Robert R. Hoar; Thomas C. Mackasek, individually; Cullen and Dykman LLP; Helen L. Hoart as co-Trustee for Trust u/w of Gladys G. Hoart f/b/o Robert R. Hoar; the Estate of Robert R. Hoar; Helen L. Hoart, individually; Helen L. Hoart, as executrix for the will of Gladys G. Hoart; Bailey Dunlap Sterrett, III; Brendan Gallagher Hoar; and Patrick Reddy Hoar.  Plaintiff alleges, inter alia, breach of oral contract, quantum meruit, tortious interference with her and her now-deceased husband's inheritance, lack of mental capacity, breach of fiduciary duty, self dealing, conversion, fraudulent conveyance, fraud by inducement, intentional infliction of emotional distress, negligent infliction of emotional distress, legal malpractice, elder abuse, and violation of the Connecticut Unfair Trade Practices Act. (Id.). Many of the events at issue in the complaint occurred between 2004 and 2008. (Id.).

On the day she filed the complaint, plaintiff also filed a Motion for Leave to Proceed In Forma Pauperis (Dkt. #2) and an Application for Prejudgment Remedy ["PJR] (Dkt. #3). On November 30, 2011, plaintiff filed an affidavit related to her PJR application. (Dkt. #6).

On that same day, Judge Meyer granted plaintiff's Motion for Leave to Proceed In Forma Pauperis (Dkt. #7) and referred plaintiff's PJR application to this Magistrate Judge (Dkt. #8). On December 1, 2017, this Magistrate Judge issued an electronic order scheduling an evidentiary hearing on plaintiff's PJR application on December 6, 2017, requiring plaintiff to serve specific documents upon defendants, and requiring plaintiff to file a memorandum addressing three issues: first, whether this Court has subject matter jurisdiction over all the claims in this lawsuit, as opposed to a Probate Court in the State of New York where Gladys Hoart resided and died (see Marshall v. Marshall, 126 S. Ct. 1735 (2006) and Lefkowitz v. Bank of New York, 528 F.3d 102 (2d Cir. 2007)); second, whether this Court has in personam jurisdiction over the eleven defendants, all of whom reside in New York, Delaware, Washington, D.C., or Virginia; and third, whether the statute of limitations has run with regard to events that transpired in 2004-08. (Dkt. #11). Plaintiff filed the required memorandum on December 4, 2017. (Dkt. #14).

Plaintiff's PJR application sought an attachment of $500,000 against a trust account being held at Merrill Lynch, the funds of which were scheduled to be distributed by December 8, 2017, and against a property located in Bridgeport, Connecticut. (Dkt. #3; see also Dkt. #6). In open court on December 6, 2017, the parties reached an agreement granting in part plaintiff's PJR application. (Dkts. ##21, 23-24). Without conceding or contesting probable cause, the defendants agreed to provide the following: (1) a $500,000 cash bond to secure plaintiff's claims, and (2) a lien of prejudgment attachment on real property located at 350 Grovers Avenue, Unit 7E, Bridgeport, CT, 06605. (Dkt. #23). The parties further agreed to submit supplemental briefing on whether the Connecticut statutes permit the defendant Trust to sell the so-liened property upon the posting of a substituted bond, and whether the Court

has the authority to bar such a sale during the pendency of the action. (Id.). Plaintiff filed her initial brief on January 18, 2018 (Dkt. #34), and defendants filed their initial brief the next day (Dkts. ##36-37).[1] Plaintiff filed her reply brief on January 25, 2018 (Dkt. #41), and defendants filed their reply brief the next day (Dkt. ##42-43).[2]

For the reasons set forth below, this Court finds that CONN. GEN. STAT. § 52-304 permits defendants to dissolve the lien of attachment on the real property in question upon the posting of a substituted bond, and that such provision is not discretionary; this Court may only review the proposed substitution to determine that it has a net equity value that is equal to or greater than the value of the attachment. Accordingly, plaintiff's Application for Prejudgment Remedy (Dkt. #3) is <u>granted in part and denied in part</u>, such that defendants will provide a $500,000 cash bond and a lien on the real property in question to secure plaintiff's claims, but defendants may apply to dissolve the attachment lien pursuant to CONN. GEN. STAT. § 52-304.

## I. DISCUSSION

### A. LEGAL STANDARD FOR PREJUDGMENT REMEDY

A PJR "is generally intended to secure the satisfaction of a judgment should plaintiff

---

[1] On January 19, 2018, Defendants Helen L. Hoart, individually and in her capacities as co-Trustee for the Trust created under the Last Will and Testament of Gladys G. Hoart and as the Executrix of the Estate of Gladys G. Hoart, and Bailey Dunlap Sterrett, III, filed their initial brief. (Dkt. #36). That same day, Defendant Thomas Mackasek, individually and in his capacity as a trustee for the Trust created under the Last Will and Testament of Gladys G. Goart, and Cullen and Dykman LLP, filed a memorandum stating that they join the memorandum filed by their co-defendants earlier that day. (Dkt. #37). This filing included a declaration from Attorney Gary E. Bashian stating that his clients, Defendants Brendan Gallagher Hoar and Patrick Reddy Hoar, join the memorandum. (Id.).

[2] Defendant Thomas Mackasek, individually and as trustee for the Trust u/w of Gladys G. Hoart, Defendant Cullen and Dykman LLP, and Defendants Brendan Gallagher Hoar and Patrick Reddy Hoar joined the brief filed by defendants Helen L. Hoart, individually and as co-trustee for the Trust u/w of Gladys G. Hoart and Executrix for the Will of Gladys G. Hoart, and Bailey Dunlap Sterrett, III. (Dkt. #43).

prevail." Cendant Corp. v. Shelton, No. 3:06 CV 854 (JCH), 2007 WL 1245310, at *2 (D. Conn. Apr. 30, 2007)(citation omitted). Rule 64 of the Federal Rules of Civil Procedure authorizes the Court to enter a PJR as may be permitted "under the law of the state where the court is located" in order "to secure satisfaction of the potential judgment." FED. R. CIV. P. 64(a); see Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 436 n. 10 (1974).

Pursuant to the Connecticut PJR statute, the standard for issuing a prejudgment remedy is probable cause, so that a prejudgment remedy is appropriate

> [i]f the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the [movant] has shown probable cause that such a judgment will be rendered in the matter in the [movant's] favor in the amount of the prejudgment remedy sought . . . .

CONN. GEN. STAT. § 52–278d(a). "Probable cause" has been defined by the Connecticut courts as "'a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.'" Walpole Woodworkers, Inc. v. Atlas Fencing, Inc., 218 F. Supp. 2d 247, 249 (D. Conn. 2002), quoting Three S. Dev. Co. v. Santore, 193 Conn. 174, 176 (1984)(citation omitted). A PJR proceeding is "only concerned with whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." Benton v. Simpson, 78 Conn. App. 746, 751–52 (Conn. App. Ct. 2003)(citation & internal quotations omitted). While a PJR hearing "is not contemplated to be a full scale trial on the merits of plaintiff's claim[s]," Bank of Boston Conn. v. Schlessinger, 220 Conn. 152, 156 (1991)(multiple citations & internal quotations omitted), a plaintiff is "bound to furnish proof of [her] damage with reasonable

probability, and not leave the trial court to speculation and conjecture." Mullai v. Mullai, 1 Conn. App. 93, 95 (Conn. App. Ct. 1983)(per curiam). After a hearing, the Court must "consider not only the validity of the plaintiff's claim but also the amount that is being sought." Calfee v. Usman, 224 Conn. 29, 38 (1992) (citation & internal quotations omitted). Additionally, the Court must "evaluate not only the plaintiff's claim but also any defenses raised by the defendant." Balzer v. Millward, Civ. No. 3:10 CV 1740 (SRU)(HBF), 2011 WL 1547211, at *1 (D. Conn. Apr. 21, 2011), quoting Haxhi v. Moss, 25 Conn. App. 16, 20 (Conn. App. Ct. 1991)(citation omitted).

B. DISSOLUTION OF ATTACHMENT LIEN ON REAL PROPERTY

In open court on December 6, 2017, the parties agreed that for the security of her claims, defendants would provide plaintiff with, inter alia, a lien of prejudgment attachment on the real property located at 350 Grovers Avenue, Unit 7E, Bridgeport, CT, 06605. (Dkt. #23). The parties sought leave to file supplemental briefing such that this judicial officer would determine whether Connecticut statutes permit the defendant Trust to sell the so-liened property upon the posting of a substituted bond, and whether the Court has the authority to bar such a sale for the pendency of this action.

CONN. GEN. STAT. § 52-304 provides as follows:

> When any estate is attached, or any debt or effects taken by process of foreign attachment, the defendant may apply in writing to the court in which such action may be pending, or any judge thereof, to dissolve the attachment lien upon the substitution of (a) a bond with surety or (b) a lien on any other property of defendant which has an equal or greater net equity value than the amount secured by such attachment.

The purpose of the statute, explained at the time of its passage, was to:

> make an attachment what it has always been meant to be[:] security for a claim. Presently, as written, the statute is used as a weapon over the head of a defendant landowner who wishes to sell his property and can provide

5

> equal or greater security but is unable to do so due to the unreasonableness of a plaintiff.

14 H.R. Proc., 1971 Sess., pt. 2, p. 646 (remarks of Rep. George C. Guidera), cited in Brainard v. Smyth Mfg. Co., 178 Conn. 250, 253 (1979). Accordingly, the statute prevents a "plaintiff from abusing the prejudgment remedy of attachment by allowing the defendant to substitute either a lien or bond in lieu of the property originally attached." Feuser v. Lampron, 6 Conn. App. 350, 352-53 (Conn. App. Ct. 1986), citing Brainard, 178 Conn. at 253; People's United Bank v. Kudej, CV 105029278S, 2011 WL 1887542, at *1 (Conn. Super. Ct. Apr. 27, 2011)(Dooley, J.). Such a substitution is consistent with the PJR's purpose of securing the value of the plaintiff's claim while litigation is ongoing; allowing a substitution of equal value neither "change[s] the relative position of either party in the property nor . . . diminish[es] the amount secured by the plaintiff's attachment." Brainard, 178 Conn. at 252.

Courts have repeatedly held that the language of CONN. GEN. STAT. § 52-304 "is clear, precise and unambiguous. There is no necessity for any judicial construction of the statute." Feuser, 6 Conn. App. at 353, citing Doe v. Manson, 183 Conn. 183, 186 (1981) and Kaplan v. Ellis, 1 Conn. App. 368 (Conn. App. Ct. 1984); People's United Bank, 2011 WL 1887542, at *1 (same).

While CONN. GEN. STAT. § 52-304 says that a defendant "may apply" for such a substitution, this provision of the statute is not discretionary. See Feuser, 6 Conn. App. at 353 ("[A] fair reading of the case law relating to General Statutes § 52-304 indicates that its provisions are not discretionary."), citing Capobinco v. Samorak, 102 Conn. 310, 316-17 (1925); see also People's United Bank, 2011 WL 1887542, at *1 ("[T]here is no question that the provisions of the statute are not discretionary."), citing Feuser, 6 Conn. App. at 353.

"It is familiar law that it is often necessary to construe the word 'may' as equivalent to 'shall' in a statute in order to effectuate the legislative intent[.]" Capobinco, 128 A.2d at 648. When considering the general rules commonly accepted as governing statutory interpretation, "'what [public officers] are empowered to do for a third person[,] the law requires shall be done. The power is given, not for their benefit, but for his.'" Id. at 649 (internal citations omitted). Accordingly, "unless the section in question carries the clear implication of a discretionary jurisdiction conferred," the defendant whose estate has been seized by attachment is entitled to the benefit of "a scheme of legislation permitting . . . [him] to recover [the land's] possession and use by filing a bond in substitution for the lien of the attachment." Id. The Connecticut Supreme Court thus held that "the return of property attached on substitution of a bond is under the statutes, a matter of right in favor of the defendant and not of discretion in the authority acting upon his application[.]" Id. at 650.

As such, upon application pursuant to this statutory proceeding, this Court "may only review the request as to the sufficiency of the offered lien or bond." Feuser, 6 Conn. App. at 353, citing Sachs v. Nussenbaum, 92 Conn 682 (1918); see also People's United Bank, 2011 WL 1887542, at *1. "That is, if the court determines that the proposed substitute has a net equity value that is equal to or greater than the amount of the attachment, the court must grant the motion." People's United Bank, 2011 WL 1887542, at *1.

Plaintiff concedes in her briefs that Feuser "is the authority on the issue[]" and holds that sale of an attached property can take place where "the fair market value [of the proposed substitution] equal[]ed or exceeded" the value of the attachment. (Dkt. #34, Brief at 5). However, plaintiff argues that a bond substitution for the attached property, based on the property's fair market value, is insufficient because:

7

> In [p]laintiff's case the attachment is the actual value of the property, plus the plaintiff's right to continue to live in the property, and any judgment in her favor in excess of the other agreed $500,000 bond. The fair market value is less than sufficient. The court ordered attachment is by [a]greement of the parties, the bond substitution is not.

(Id.)(emphasis omitted). As plaintiff notes, the attachment on the real property serves to protect plaintiff's interest in any favorable judgment in excess of the $500,000 bond; for the purposes of a PJR, plaintiff's interests are equally protected by an attachment on the property or by a substituted bond for the value of the property, even if the bond substitution is not by agreement of the parties. Plaintiff asserts that a bond would be "counterproductive and does not resolve the issues at hand[,]" and "the request to dissolve the attachment and replace it with a bond does not make any sense[]" because "[t]he attachment is to protect and secure the property." (Id.). While a substitution for the attached property might be "counterproductive" in the sense that it does not ultimately resolve the allegations in this case, a final resolution of "the issues at hand" is decidedly not the purpose of a PJR.

Plaintiff subsequently articulates the standard for a temporary injunction and informs the Court that, in light of the uniqueness of the real property, the purpose of a temporary injunction is to preserve the status quo. (Id. at 6). However, as defendants note, this Court has made no probable cause findings on any of plaintiff's claims, and "there are no applications for injunctions pending or requests for other interlocutory orders that are ripe for review." (Dkt. #42, Brief at 3). Accordingly, defendants may apply to dissolve plaintiff's attachment lien on the real property in question, pursuant to CONN. GEN. STAT. § 52-304, and plaintiff is, of course, entitled to any and all remedies provided to her under Connecticut law to challenge defendants' efforts to have her vacate the premises, and to raise the other arguments made in her briefs here, if permitted by the appropriate court(s).

8

II. CONCLUSION

For the reasons stated above, plaintiff's Application for Prejudgment Remedy (Dkt. #3) is <u>granted in part and denied in part to the extent set forth above</u>.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.[3] As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b) (**written objection to ruling must be filed within fourteen calendar days after service of same**); FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Impala v. United States Dept. Of Justice</u>, 670 F. App'x 32 (2d Cir. 2016)(failure to file timely objection to Magistrate Judge's recommended ruling <u>will</u> preclude further appeal to Second Circuit); <u>cf. Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2d Cir.1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

---

[3]It has long been the rule in this district that a PJR application is a non-dispositive motion, and upon referral to a Magistrate Judge, does not require a recommended ruling. <u>Aetna Life Ins. Co. v. Tooth Savers Dental Serv.</u>, No. 96 CV 102453 (GLG), 1997 WL 102453, at *1 (D. Conn. Feb. 5, 1997). <u>See also Walsh v. St. Denis</u>, 17 CV 132 (AWT)(SALM), 2017 WL 4163662, at *9, n.10 (D. Conn. Sept. 20, 2017); <u>Edelstein v. Lucas Brand Equity</u>, LLC, 16 CV 1353 (WWE)(JGM), 2017 WL 2399583, at *11, n.18 (D. Conn. June 2, 2017); <u>Doe v. Bruno</u>, 17 CV 217 (JAM)(JGM), 2017 WL 1424298, at *4, n.3 (D. Conn. Apr. 20, 2017); <u>Lafarge Bldg. Materials, Inc. v. A. Aiudi & Sons, LLC</u>, 15 CV 1203 (JBA)(JGM), 2015 WL 6551796, at *8, n.19 (D. Conn. Oct. 29, 2015); <u>Corey v. Hawes</u>, 14 CV 1266 (JAM)(JGM), 2015 WL 5472507, at *11, n.29 (D. Conn. Sept. 17, 2015); <u>Balzer</u>, 2011 WL 1547211, at *5, n.7; <u>CapitalSource Fin. LLC v. Autorino</u>, 09 CV 2148 (RNC)(DFM), 2011 WL 1195857, at *1, n.1 (D. Conn. Mar. 11, 2011); <u>United of Omaha Life Ins. Co. v. Conn. Student Loan Found'n</u>, 718 F. Supp. 2d 277, 286 (D. Conn. 2010).

Dated at New Haven, Connecticut, this 31st day of January, 2018.

                                            /s/Joan G. Margolis, USMJ
                                            Joan Glazer Margolis
                                            U.S. Magistrate Judge