# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JOAN SECHLER-HOAR, *et al.*,
    *Plaintiffs*,

    v.

TRUST U/W OF GLADYS G. HOART, *et al.*,
    *Defendants*.

No. 3:17-cv-01968 (JAM)

## ORDER GRANTING MOTIONS TO DISMISS

Plaintiff Joan Sechler-Hoar has filed a mammoth complaint against numerous estates and relatives of her late husband and her late mother-in-law, as well as against lawyers who were involved in the administration of the estates. The complaint—already twice amended—weighs in at a staggering 93 single-space pages, featuring some 532-numbered paragraphs and 47 separate claims.

In essence, plaintiff complains that she long took care of both her late husband and her late mother-in-law but that defendants reneged on promises to pay for her services and also connived to cut her out from her rightful inheritance. Page after page of the complaint recounts a classic family/probate domestic relations drama of the type that would ordinarily be filed in a state court that specializes in such matters rather than in a federal court. Indeed, the vast bulk of plaintiff's claims—45 out of 47 of them—arise under state law for breach of contract, tortious interference with inheritance, undue influence, elder abuse, lack of testator capacity, breach of executor's and lawyers' fiduciary duty, fraudulent conveyance, conversion, infliction of emotional distress, and so on.

All defendants have now moved to dismiss (Docs. #80, #82, #83). I will grant their motions. First, I will review the two federal law claims that plaintiff has tacked on to the end of her complaint. After discussing why these claims lack merit, I will address why the Court does not otherwise have subject matter jurisdiction as plaintiff claims.

*FLSA and FICA*

In Count 42, plaintiff brings a hybrid claim under both the Fair Labor Standards Act ("FLSA") and the Federal Insurance Contributions Act ("FICA"). Plaintiff believes that because she took care of her late husband in the last years of his life, she was entitled under the FLSA to be paid by her mother-in-law's estate and a testamentary trust created by the estate. But back when Congress enacted the FLSA during the New Deal, its purpose was to regulate fair pay in the workplace and not to encourage spouses to try to make money from taking care of each other, much less—as plaintiff would like—to tag her mother-in-law's estate with the bill to boot.

Indeed, the FLSA applies only to actual employer-employee relationships. *See Irizarry v. Catsimatidis*, 722 F.3d 99, 103-04 (2d Cir. 2013). Yes, it is true that the existence of a family relationship does not necessarily negate the existence of of an employer-employee relationship, *see Velez v. Sanchez*, 693 F.3d 308, 328 (2d Cir. 2012), but a court must nonetheless look to the "economic reality" of the relationship and consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (internal quotations and citation omitted).

Beyond alleging in barren, conclusory terms that one of the family trusts was her "employer," Doc. #75 at 81 (¶ 491), plaintiff has not alleged facts that plausibly establish the elements of an employer-employee relationship when she took care of her husband. A court is

"not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). It is beyond implausible—and certainly not factually supported in plaintiff's otherwise corpulent complaint—to suggest that some estate or testamentary trust wielded the power to fire plaintiff from her "job" of taking care of her husband or to supervise her day-to-day activities at home.

Moreover, even assuming an employment relationship existed, the alleged services that plaintiff provided to her husband fall well within FLSA's exemption for companionship services. *See* 29 U.S.C. § 213(a)(15) (excluding from FLSA coverage "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves"); *Salyer v. Ohio Bureau of Workers' Comp.*, 83 F.3d 784, 787 (6th Cir. 1996) (companionship services exemption applied to plaintiff who testified "that she helps her husband dress, gives him his medication, helps him bathe, assists him in getting around their home, and cleans his bedclothes when he loses control of his bowels").

Nor can plaintiff sustain her FICA claim for failure of any of the defendants to comply with their purported obligations to deduct pay and make contributions to Social Security and Medicare as required under FICA. In light of the demanding standard that must be satisfied for a court to imply a cause of action from a statute like FICA that does not expressly create a private cause of action for its violation, *see, e.g.*, *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 307–12 (2d Cir. 2000), many courts have ruled with good reason that there is no private right of action under FICA. *See, e.g.*, *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 66–67 (3d Cir. 2008); *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 722–26 (11th Cir. 2002); *Ferro v. Metro. Ctr. for Mental Health*, 2014 WL 1265919, at *5–6 (S.D.N.Y. 2014); *Glanville v. Dupar,*

3

*Inc.*, 727 F. Supp. 2d 596, 599–602 (S.D. Tex. 2010). Although the Second Circuit has not decided this issue and plaintiff cites some contrary district court decisions that allow for a private right of action under FICA, I agree with the two courts of appeals that have examined this issue as well as with the reasons stated by Judge Rosenthal for rejecting the decisions on which plaintiff relies. *See Glanville*, 727 F. Supp. 2d at 600-01. Accordingly, because plaintiff has failed to allege plausible grounds for relief under the FLSA or FICA (or both), I will dismiss Count 42 of the second amended complaint.

### *Internal Revenue Code claims*

In Count 47, plaintiff alleges seriatim violations of multiple provisions of the Internal Revenue Code, including 26 U.S.C. §§ 6652, 7203, 7402, 7422, and 7434. This claim overlooks the general rule that "[p]rivate citizens cannot enforce the provisions of the Tax Code," because "[t]hat is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud." *Seabury v. City of New York*, 2006 WL 1367396, at *5 (E.D.N.Y. 2006) (no private cause of action for violations of 26 U.S.C § 7202).

Not surprisingly, numerous courts have expressly rejected private causes of action premised on the very provisions plaintiff cites to support her claim. *See Small v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 3719314, at *8–9 (E.D. Cal. 2010) (no private cause of action under § 7203); *Woods Oviatt Gilman, LLP v. United States*, 2013 WL 1636042, at *3 (W.D.N.Y. 2013) (no private cause of action under § 7402); *Zito v. New York City Office of Payroll Admin.*, 2011 WL 5420054, at *3 (S.D.N.Y. 2011) (no private cause of action under § 7422), *affirmed*, 514 F. App'x 26 (2d Cir. 2013).[1]

---

[1] Research does not reveal any cases discussing whether there is a private right of action under 26 U.S.C. § 6652, but plaintiff does not point to any language in that statute suggesting that it creates a private right of action.

To be sure, one of the cited provisions—26 U.S.C. § 7434—allows for a private cause of action. Section 7434 provides that "if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434. But plaintiff here alleges no facts to suggest that any defendant filed such a fraudulent return (much less willfully so). The best that plaintiff can do is allege that she has been "unable to determine" whether proper income tax returns were filed. Doc. #75 at 91 (¶ 537).

This indefinite allegation falls well short of stating a plausible claim for the filing of a false return under § 7434. *Cf. Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (noting that § 7434 applies "only '[i]f any person *willfully files* a fraudulent information return.' . . . which plainly does not encompass an alleged *failure* to file a required information return.") (*per curiam*); *In re Domino's Pizza Inc.*, 2018 WL 1587593, at *8 (S.D.N.Y. 2018). Accordingly, because plaintiff has not stated a plausible claim under any of the multiple tax code provisions she cites, I will dismiss Count 47.

*Interpleader*

Apart from her two federal claims, plaintiff claims that the Court retains federal jurisdiction over this action pursuant to the federal interpleader statute. This statute confers federal jurisdiction over certain actions if "(1) "[t]wo or more adverse claimants, of diverse citizenship . . . , are claiming or may claim" entitlement to "money or property of the value of $500 or more," and (2) "*the plaintiff has deposited such money or property . . . into the registry of the court*, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper. . . ." 28 U.S.C. § 1335 (emphasis added).

5

As the statutory text makes clear, a federal interpleader action may not proceed absent a stakeholder's deposit of disputed funds or bond with the Court. *See New York Life Ins. Co. v. Sahani*, 2018 WL 1790162, at *3–4 (2d Cir. 2018). "In statutory interpleader, the stakeholder is required to file the stake or a bond with the court," and "[t]his deposit is a jurisdictional requirement, and failure to effect it precludes the court from proceeding with statutory interpleader." 4 Moore's Federal Practice § 22.04[6][b] (3d ed. 2018).

Neither plaintiff nor any other party has made any deposit of funds or a bond to the registry of this Court. Accordingly, there is no merit to plaintiff's argument that the federal interpleader statute confers federal jurisdiction in this case.

Plaintiff also cites the interpleader provision of Rule 22 of the Federal Rules of Civil Procedure. It is well settled, however, that Rule 22 (or so-called "rule interpleader") does not provide an independent basis for federal jurisdiction beyond what the federal interpleader statute otherwise allows. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 124 (2d Cir. 2003); *Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000); *see also* 4A Moore's Federal Practice § 22.04[1] (3d ed. 2018) (noting that "Rule 22, which is the basis of Rule interpleader, cannot affect the jurisdiction or venue of the federal courts"). Plaintiff cites no decisions to the contrary. Plaintiff's argument that Rule 22 confers federal jurisdiction is frivolous.

Plaintiff next cites *Millman v. Paige*, 55 Conn. App. 238 (Conn. App. 1999), to support her claim for federal interpleader jurisdiction. That decision is a *state* court decision that construes a *state* interpleader statute, Conn. Gen. Stat. § 52-484. It is Congress alone that defines the subject matter jurisdiction of the federal courts. *See* U.S. Const., Art. II, § 1; *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). Neither the State of Connecticut nor state courts in general have

6

the least bit of authority to create or enlarge the jurisdiction of the federal courts. Plaintiff's argument that state law confers federal jurisdiction is frivolous.

Lastly, plaintiff argues that the Court has some kind of federal *in rem* jurisdiction by virtue of the fact that the Court has previously issued orders in this case with respect to plaintiff's motion for a prejudgment remedy. But, in the absence of a command from Congress, a federal court may not confer jurisdiction on itself merely by ruling on preliminary motions for prejudgment remedies or other relief. The absence of federal jurisdiction may never be waived by the parties or even a court itself. *See, e.g.*, *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997). In short, the Court has no interpleader or *in rem* jurisdiction over this case.

### *Diversity or supplemental jurisdiction*

Absent a federal cause of action or federal interpleader jurisdiction, the only remaining claims arise under state law. Federal courts of course may exercise diversity jurisdiction over state law claims involving an amount in controversy of more than $75,000 if there is so-called "complete" diversity among the opposing parties (*i.e.*, plaintiff is a citizen of a different State than all of the defendants). *See* 28 U.S.C. § 1332; *Strawbridge v. Curtis*, 3 Cranch. 267 (1806) (Marshall, C.J.). But here, however, plaintiff is a citizen of Connecticut while defendant Cullen and Dykman LLP is also a citizen of Connecticut by virtue of the citizenship of at least one of its partners. For purposes of diversity jurisdiction, the citizenship of a limited liability partnership (LLP) is determined by reference to the citizenship of each of its general and limited partners. *See, e.g.*, *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990); *Caren v. Collins*, 689 F. App'x 75, 76 (2d Cir. 2017).

7

As plaintiff conceded at oral argument (Doc. #108 at 24-25), there is no basis for diversity jurisdiction. And in light of my dismissal of all federal claims at the pleading stage, I decline to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *see, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013).

*Conclusion*

Plaintiff's two federal law claims—Counts 42 and 47—do not allege plausible grounds for relief. The Court does not otherwise have federal interpleader jurisdiction or diversity jurisdiction, and it declines to exercise supplemental jurisdiction.

Accordingly, the Court GRANTS defendants' motions to dismiss (Docs. #80, #82, #83). The Court DENIES plaintiff's motion for interpleader (Doc. #40). The Court DENIES as moot plaintiff's motions for accounting and proof of attachment (Docs. #89 and #90).

The Court's order of dismissal is without prejudice in the event that plaintiff has well-founded grounds for filing an amended complaint within 21 days by August 24, 2018, that alleges a plausible federal law claim or that properly invokes the Court's federal diversity jurisdiction.

In accordance with the Court's colloquy with counsel at oral argument (Doc. #108 at 31-33), the Court encourages plaintiff and her counsel to very carefully consider whether any future complaint should be filed in a state court rather than a federal court. The Court has chosen not to address in this ruling defendants' additional jurisdiction arguments, and plaintiff and her counsel should consider whether it is in plaintiff's interest to continue the litigation of these jurisdictional arguments and to litigate any arguments for abstention in light of any pending state court or probate proceedings.

In the event that plaintiff chooses to file an amended complaint in this Court, plaintiff is also advised that any amended complaint should be carefully reviewed by counsel to state only those facts that are germane to grounds for relief and that otherwise comply with the requirement of Fed. R. Civ. P. 8 to allege a "short and plain statement" of the claim. Any amended complaint should avoid needless repetition or extraneous detail of the type that appears throughout the present complaint.[2]

It is so ordered.

Dated at New Haven this 3d day of August 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[2] For example, the complaint needlessly repeats after every single one of its 47 counts a long list of demands for relief and damages, rather than simply including a single prayer for relief and damages at the end of the complaint as is standard pleading practice. The complaint is otherwise replete with gratuitous personal detail. For example, the complaint details how plaintiff's mother-in-law was once on the board of a musician's club (Doc. #75 at 6), that plaintiff's sister-in-law once attended a Catholic high school in New York (*ibid.*), that yet another one of the defendants is "an alumnus of George Washington University" and was "an ex-tennis pro until an injury" (*id.* at 7), that plaintiff knows the street address of the church in Washington, D.C. where she was married (*id.* at 8), that plaintiff's husband had an affair in 2007 (*id.* at 9), and that it was "very odd" for one of the lawyer defendants to attend the mother-in-law's funeral because members of the mother-in-law's family "are not very tall and Attorney Mackasek towered over the family" (*id.* at 12). Although these kinds of pleading deficiencies may be typical of a complaint that has been filed by a *pro se* plaintiff, the plaintiff here is represented by counsel who should be familiar with basic pleading rules and practices. *See generally Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (describing improper "shotgun" pleading practices including "the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and "the sin of not separating into a different count each cause of action or claim for relief").