## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOAN SECHLER-HOAR, *et al.* | ) | 3:17-CV-01968 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUST U/W OF GLADYS G. HOART, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | JANUARY 21, 2020 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge

This case arises out of the death of Gladys G. Hoart ("Gladys") and her son Robert R. Hoar ("Bob").[1]  Bob's widow, Joan Sechler-Hoar, ("Joan" or the "Plaintiff"), brings this suit against Bob's family and others involved in the estate planning for Gladys and Bob.  Although Joan initially proceeded *pro se*, she retained counsel shortly after filing suit.  Yet, after the filing of three amended complaints, the briefing of three motions to dismiss, and a prior ruling on one of those motions, the Court is still left with an unwieldy and convoluted complaint, consisting of numerous redundant and patently deficient (and in some instances outright frivolous) causes of action, some of which have been previously dismissed by this Court.  For the reasons set forth in this decision, the Motion to Dismiss is GRANTED in part and DENIED in part.

## Background

### Factual Allegations[2]

The Court assumes the parties' familiarity with this lengthy and contentious family dispute. In brief, the relevant factual allegations are as follows.  Gladys had three children:  Bob, Helen

---

[1] Many of the parties, being family members, share the same last name.  Although unusual, in the interest of clarity, the Court refers to these parties by their first names.

[2] For purposes of resolving the motions to dismiss, the Court accepts the allegations in the complaint as true.

Hoart ("Helen") and Andrew Hoar ("Andrew"). (Third Amended Compl. at ¶¶ 14, 24.) Bob has two children from his first marriage: Patrick Hoar ("Patrick") and Brendan Hoar ("Brendan"). (*Id.* at ¶¶ 3–4.) On November 24, 2004, Bob married Joan with whom he had no children. (*Id.* at ¶ 19.) Helen is married to Bailey Dunlap Sterrett, and the couple has three children who are not parties to this action. (*Id.* at ¶¶ 15, 46.) Andrew died without issue in 2006. (*Id.* at ¶ 24.)

On January 26, 2008, Gladys executed a will drafted by an attorney, defendant Thomas C. Mackasek ("Attorney Mackasek"). (*Id.* at ¶ 42.) Under the terms of the will, each of Gladys' five grandchildren were to receive $100,000. (*Id.* at ¶¶ 46–47.) The residue and remainder of her estate was to be equally divided between Helen and a trust created for the benefit of Bob (the "Trust"). (Ex. B at 3, Third Amended Compl., ECF No. 112-1.) Under the terms of Gladys' will, the Trust was to be dissolved upon Bob's death and its assets distributed to Patrick and Brendan. (*Id.* at 5.) The will appointed Helen as executrix of Gladys' estate and designated Helen and Attorney Mackasek as co-trustees for the Trust. (Third Amended Compl. at ¶¶ 43–45.)

In March 2008, Helen and Bailey offered to permit Joan and Bob to live in their condominium in Bridgeport, Connecticut (the "Condo"). (*Id.* at ¶ 57.) In May 2008, Joan and Bob moved into and began leasing the Condo from Helen and Bailey. (*Id.* at ¶ 59.)

On October 1, 2008, Gladys died. (*Id.* at ¶ 63.) On October 22, 2008, Bob filed a waiver of process and consent to probate Gladys' will dated January 26, 2008. (Def.'s Ex. A, ECF No. 116-2.) On November 19, 2008, Letters Testamentary were issued to Helen and Letters of Trusteeship were issued to Helen and Attorney Mackasek by the Surrogate's Court of the State of New York, County of Nassau ("Surrogate's Court"). (Def.'s Ex. B, ECF No. 116-3; Def.'s Ex. C, ECF No. 116-4.) Thereafter, Gladys' estate was settled, it appears, without any issue. Helen and

Attorney Mackasek began dispersing funds to Bob from the Trust.[3]  In May 2011, the Trust purchased the Condo from Helen and Bailey for $215,000.  (Third Amended Compl. at ¶ 83.)

On April 9, 2017, Patrick had a conversation with Joan's sister-in-law while at the hospital visiting Bob, who "was really bad off."  (Ex. J at p.4, ¶¶ 8, 9, Third Amended Compl., ECF No. 112-1.)  During that conversation, Patrick allegedly agreed with Joan's sister-in-law when she said that Joan should receive the Condo and "at least" one third of the Trust when Bob died.  (*Id.* at p.4, ¶¶ 10, 13.)  On April 10, 2017, Bob died.  (Third Amended Compl. at ¶ 2.)  Upon Bob's death, Joan became the executrix of his estate.  (*Id.*)

**Procedural History**

On November 22, 2017, Joan initiated this action *pro se* against Bob's family and others involved in the estate planning for Gladys and Bob.  Joan is suing in her individual capacity, her capacity as executrix of Bob's estate, and her capacity as a creditor against the Trust (individually and collectively, the "Plaintiff").  Counsel appeared on Joan's behalf on December 5, 2017.

On January 22, 2018, the Plaintiff filed the First Amended Complaint.[4]  After, the Defendants moved to dismiss the Amended Complaint, the Plaintiff filed a motion to amend her complaint, which was granted. On March 15, 2018, the Plaintiff filed the Second Amended Complaint, which consisted of ninety-three pages, over 500 paragraphs, and approximately forty-seven counts.  Thereafter, the Defendants moved to dismiss the Second Amended Complaint.  On August 3, 2018, the Court (*Meyer, J.*)[5] granted the motions to dismiss the Second Amended

---

[3] Through this action the Plaintiff disputes whether Helen and Attorney Mackasek abided by the terms of the Trust when dispersing funds.

[4] The First Amended Complaint was ninety-one pages, single-spaced, and includes thirteen exhibits totaling an additional fifty-two pages.  The complaint did not evidence any attempt to comply with court rules or customs regarding formatting.

[5] This matter was transferred to the undersigned on September 20, 2018.  (ECF No. 121.)

Complaint in its entirety for lack of subject matter jurisdiction.[6] *Sechler-Hoar v. Tr. U/W of Gladys G. Hoart*, No. 3:17-cv-01968 (JAM), 2018 WL 3715277, at *1 (D. Conn. Aug. 3, 2018) [hereinafter *Sechler-Hoar I*]. Among other things, Judge Meyer explained why the Plaintiff failed to state any plausible federal claims, and he explained that diversity jurisdiction was lacking because defendant Cullen and Dykman LLP, like the Plaintiff, was a citizen of Connecticut.

On August 23, 2018, the Plaintiff filed the Third Amended Complaint, which consists of sixty pages, over 500 paragraphs, and forty-nine counts.[7] This is the operative complaint and the subject of the instant motions to dismiss. Like the prior complaints, the Third Amended Complaint contains a litany of purported wrongs perpetrated by the Defendants against Joan before and after the deaths of Gladys and Bob. It names as defendants the Trust, Helen (individually, as executrix, and as a co-trustee), Helen's husband, Gladys' estate, Brendan, Patrick, and Attorney Mackasek (individually and as a co-trustee). The Third Amended Complaint no longer names Cullen and Dykman LLP as a defendant, thereby creating complete diversity among parties.

On September 6, 2018, the Defendants moved to dismiss the Third Amended Complaint. The motions to dismiss focus on the probate exception to federal jurisdiction. They also challenge select counts for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[6] The Court also denied Joan's motion for interpleader on the merits and motions for accounting and proof of attachment as moot.

[7] Numerically, there are forty-seven counts. But the complaint has duplicate Counts Six, Seven, Fourteen, and Fifteen, and it is missing a Count Thirty-Seven and Forty-Two.

570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678.  Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

The appropriate analysis for a facial challenge to subject matter jurisdiction, like the one raised by the Defendants, is similar to that required under Rule 12(b)(6).  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  The task of the district court is to determine whether, after accepting as true all material factual allegations of the complaint and drawing all reasonable inferences in favor of the plaintiff, the alleged facts affirmatively and plausibly suggest that the court has subject matter jurisdiction.  *Id.* at 56–57.  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

## Discussion

### The Probate Exception

The Defendants move to dismiss the Third Amended Complaint in its entirety based on the probate exception to federal jurisdiction.  "The probate exception is an historical aspect of federal jurisdiction that holds probate matters are excepted from the scope of federal diversity jurisdiction.

It has long been understood that the core of the probate exception is that a federal court has no jurisdiction to probate a will or administer an estate. This exception has been described as one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Mercer v. Mercer*, No. 13-cv-05686 (SJF) (WDW), 2014 WL 3654667, at *5 (E.D.N.Y. May 22, 2014) (alterations omitted; citations omitted; internal quotation marks omitted).[8]

In *Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court revisited the probate exception and clarified its narrow scope. There, the plaintiff sought to assert a claim for tortious interference with expectance of inheritance or gift against her deceased husband's son. *Id.* at 301. The court concluded that the probate exception did not apply to this type of claim. The court explained that the probate exception only (1) "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and (2) "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311–12. It "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction," including "suits to determine the rights of creditors, legatees, heirs, and other claimants against a decedent's estate," so long as the suit would not require the federal court to endeavor to dispose of property that is in the custody of a state probate court. *Id.*. Because the plaintiff in *Marshall* sought an *in personam* judgment against the defendant, not to probate or annul her husband's will, the probate exception did not apply. *Id.* at 312.

"Following *Marshall*, courts in this Circuit have taken a narrower view of the probate exception than that taken in . . . pre-*Marshall* cases. So long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state

---

[8] *report and recommendation adopted in part sub nom. Mercer v. Bank of New York Mellon, N.A.*, No. 13-cv-05686 (SJF) (WDW), 2014 WL 3655657 (E.D.N.Y. July 21, 2014), *aff'd*, 609 Fed. Appx. 677 (2d Cir. 2015) (summary order).

court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Mercer*, 2014 WL 3654667, at *6 (alteration omitted; citations omitted). Similarly, "even though [a federal] judgment may be intertwined with and binding on . . . state proceedings, the federal courts retain their jurisdiction." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007).

With respect to trusts, the general prohibition against two courts exercising *in rem* jurisdiction over a single *res* "applies equally when . . . the *res* in question is not property of an estate but property of a trust. Moreover, it applies also to jurisdiction that is *quasi in rem*: it is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 Fed. Appx. 677, 678–79 (2d Cir. 2015) (summary order) (citations omitted; internal quotation marks omitted).

When determining whether the probate exception applies, the court "must examine the substance of the relief that [the plaintiff] [is] seeking, and not the labels [the plaintiff] ha[s] used." *Id.* at 679. An *in personam* claim might be subject to the probate exception if to provide the relief sought "the federal court would have to assert control over property that remains under the control of the state courts." *Lefkowitz*, 528 F.3d at 107. Similarly, the probate exception applies to *in personam* claims that ask "the [d]istrict [c]ourt to undo specific actions already taken by the trustees during the period of probate administration that [the] [p]laintiffs disagree with." *Mercer*, 609 Fed. Appx. at 680. "Such claims against trustees by a trust's beneficiaries for 'administration and restoration of corpus' cannot be maintained if another court is already exercising control over the trust." *Id.* (quoting *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 467 (1939)).

But the probate exception does not apply to *in personam* claims where "[the plaintiff] seeks damages from [the defendants] personally rather than assets or distributions from [the] estate." *Lefkowitz*, 528 F.3d at 107–108; *e.g.*, *id.* (concluding that probate exception did not bar breach of fiduciary duty and fraud claims where plaintiff sought damages from defendants personally).

Applying these legal principles, it is clear that some, though not all, of the Plaintiff's claims fall within the probate exception.[9]

Specifically, in Counts One, Three, and Twenty-Three, the Plaintiff asserts claims for breach of contract and fraud against Gladys' estate. As the Plaintiff conceded at oral argument, any claims against Gladys' estate, which is in the jurisdiction, custody and control of the Surrogate's Court, fall within the probate exception. *E.g.*, *Mandell v. Dolloff*, No. 3:17-cv-01282 (MPS), 2018 WL 3553343, at *4 (D. Conn. July 24, 2018) ("The probate exception therefore applies to Mandell's claims for breach of contract . . . because exercising jurisdiction over these claims and providing the relief Mandell seeks would lead this Court to dispose of property that was under the control of the probate court when this case was filed."); *U.S. Specialty Ins. Co. v. A-Val Architectural Metal Corp.*, No. 15-cv-00760 (KBF), 2015 WL 3948115, at *5 (S.D.N.Y. June 29, 2015) (holding that court lacked jurisdiction to "order the . . . [e]state to perform its obligations with respect to" property that belonged to estate and was then part of *res* in custody of Surrogate's Court). Counts One, Three, and Twenty-Three are dismissed as to Gladys' estate.

Count Forty-Four, titled "Lease Agreement between the Plaintiff and the Defendants," appears to assert either a life estate or ownership interest in the Condo. Relatedly, the Plaintiff's

---

[9] Although the Plaintiff initially suggested that the probate exception does not apply in this case because there has been no active administration of Gladys' estate or the Trust, she acknowledged at oral argument that the probate exception does apply to her claims against Gladys' estate and the Trust. The Plaintiff nonetheless maintained that the Court could adjudicate her claim to entitlement to Trust funds notwithstanding the probate exception because of the Defendants' use of those funds to secure the prejudgment remedy in this matter. The Plaintiff has cited no legal authority to support this proposition and, therefore, this contention is rejected.

request for relief seeks an unencumbered deed to the Condo and further asks this Court to assert control over certain Trust funds. Because these claims and requests for relief would require this Court to exercise control over the Trust and its assets, which are in the custody of the Surrogate's Court, the probation exception applies, and this Court is without jurisdiction. Count Forty-Four is dismissed and Paragraphs 1 and 9 of the Request for Relief are stricken.

Lastly, the Plaintiff asserts two claims that seek annulment of Gladys' will. Count Eight asserts a claim for undue influence, while Count Nine asserts a claim for lack of mental capacity. As the *Marshall* Court explained, "the probate exception reserves to state probate courts the . . . annulment of a will." *Marshall*, 547 U.S. at 311; *see also Sutton v. English*, 246 U.S. 199, 208 (1918) (holding suit to annul will was "supplemental to the proceedings for probate of the will" and therefore not cognizable in federal court). These claims, therefore, are not appropriately brought in federal court and Counts Eight and Nine are dismissed.

With respect to the remaining claims, citing to *Lefkowitz* and *Mercer*, the Defendants urge that any claims that, in essence, challenge the maladministration of an estate or trust are barred by the probate exception. In both of these cases, the Second Circuit affirmed the dismissal, pursuant to the probate exception, of certain claims that sought to challenge the administration of an estate or a trust. But the Second Circuit affirmed the dismissal of those claims not because they were complaints about maladministration of an estate or trust, but because the relief sought would have required the court to exercise control over property that was already in the control of the state probate court. *Mercer*, 609 Fed. Appx. at 679–80 ("The only relief requested in the complaint — apart from punitive damages and attorney's fees, which cannot be awarded if Plaintiffs do not succeed on their substantive claims — is the restoration to the Trust of $209,821.17 that Plaintiffs claim was improperly distributed to Carol Mercer (plus interest)."); *Lefkowitz*, 528 F.3d at 107

("To provide the relief Plaintiff seeks in Counts VI, IX, X, XI, and XII the federal court would have to assert control over property that remains under the control of the state courts."). Significantly, in *Lefkowitz*, the Second Circuit reversed the dismissal of the plaintiff's fiduciary duty and fraud claims because, "[f]or each of these claims, Plaintiff [sought] damages from Defendants personally rather than assets or distributions from either estate." *Lefkowitz*, 528 F.3d at 107–108. Similarly, the Plaintiff here seeks monetary damages from the Defendants personally and, therefore, the probate exception does not apply to the remaining claims.

In sum, the probate exception does not apply to the Plaintiffs remaining claims and requests for relief because they do not require the Court to "(1) probate or annul a will; (2) administer a decedent's estate; [or] (3) assume in rem jurisdiction over property that is in the custody of the probate court." *Mercer*, 2014 WL 3654667, at *7 (citation omitted; internal quotation marks omitted). They are claims for which the Plaintiff seeks money damages against the Defendants personally. The mere fact that these claims might be intertwined with the on-going accounting of the Trust in the Surrogate's Court[10] does not provide a basis for declining to exercise subject matter jurisdiction after *Marshall*.

Counts Eight, Nine, Twenty-Three, and Forty-Four are dismissed with prejudice pursuant to the probate exception to federal jurisdiction. Counts One and Three are similarly dismissed with prejudice to the extent that they assert claims against Gladys' estate. Paragraphs 1 and 9 of the Request for Relief are stricken.

---

[10] In support of their motions to dismiss, the Defendants submitted documentation concerning the petition for compulsory accounting Brendan and Patrick filed in the Surrogate's Court after Bob's death.

**Claims Previously Dismissed by the Court**

The Defendants next move to dismiss Counts Six, Seven, and Forty-Seven which purport to bring wage and tax claims.[11] The Defendants argue that each of these claims suffer from the same deficiencies previously identified by Judge Meyer in his ruling on the motion to dismiss the Second Amended Complaint. The Court agrees.

In broad strokes, the Plaintiff asserts that she was employed by Helen and Attorney Mackasek, in their capacity as trustees, to take care of her husband, the Trust beneficiary. In Count Six, she asserts a claim for unpaid wages against Helen and Attorney Mackasek for the end-of-life care she provided Bob. In Count Seven and Forty-Seven, she asserts claims under various provisions of the federal tax code. Judge Meyer previously dismissed the identical or substantially similar claims when ruling on the motion to dismiss the Second Amendment Complaint.

In Count Forty-Two of the Second Amended Complaint the Plaintiff asserted "a hybrid claim under both the Fair Labor Standards Act ('FLSA') and the Federal Insurance Contributions Act ('FICA')" on the basis that "she took care of her late husband in the last years of his life" and that she was therefore "entitled under the FLSA to be paid by [Gladys's] estate and [the Trust.]" *Sechler-Hoar I*, 2018 WL 3715277, at *1. With respect to the FLSA claim, Judge Meyer aptly observed at the outset that:

> back when Congress enacted the FLSA during the New Deal, its purpose was to regulate fair pay in the workplace and not to encourage spouses to try to make money from taking care of each other, much less—as plaintiff would like—to tag her mother-in-law's estate with the bill to boot.

---

[11] The Third Amended Complaint contains two Count Six and two Count Seven. When referring to Count Six and Count Seven in this decision, the Court is referring to the first set of Count Six and Count Seven, which assert a wage claim and a tax claim, respectively.

*Id.* After delineating the factors considered when determining whether there is an employer-employee relationship under the FLSA, Judge Meyer rejected the Plaintiff's contention that she plausibly alleged she was an employee observing:

> Beyond alleging in barren, conclusory terms that one of the family trusts was her 'employer,' plaintiff has not alleged facts that plausibly establish the elements of an employer-employee relationship when she took care of her husband. . . . It is beyond implausible—and certainly not factually supported in plaintiff's otherwise corpulent complaint—to suggest that some estate or testamentary trust wielded the power to fire plaintiff from her 'job' of taking care of her husband or to supervise her day-to-day activities at home.

*Id.* (citations omitted). Judge Meyer further held that even if an employer-employee relationship were plausibly alleged, "the alleged services that plaintiff provided to her husband fall well within the FLSA's exemption for companionship services." *Id.* at *2. Finally, Judge Meyer concluded that there is no implied private right of action under FICA and, therefore, dismissed the tax component of Count Forty-Two as well. *Id.*

Despite Judge Meyer's scathing assessment of the viability of an FLSA claim, the Plaintiff reasserted what is, in essence, the same wage claim in Count Six of the Third Amended Complaint.[12] The Plaintiff makes no effort to explain why Judge Meyer's earlier ruling on the viability of her wage claim should be revisited and, therefore, the Court declines to do so. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in

---

[12] In an apparent effort to avoid the ramifications of Judge Meyer's decision, the Plaintiff removed the citation to the FLSA in Count Six. She does not replace it, however, with any other statutory or common law authority for her claim, and she makes clear in her opposition memorandum that her wage claim continues to be premised on a violation of the FLSA. Counsel's conduct in this regard raises questions as to whether she fully appreciates her obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" [citation omitted]).

The Plaintiff has also reasserted her FICA claim in Count Seven.  The Plaintiff argues that Judge Meyer's ruling should be revisited because it was based on her failure to allege an employer-employee relationship adequately.  The Plaintiff misstates the record.  As previously explained, Judge Meyer did not dismiss this claim because the Plaintiff failed to plead an employer-employee relationship.  He dismissed it because he concluded that there is no implied private right of action under FICA, and his ruling was unequivocal in that regard.  *Sechler-Hoar I*, 2018 WL 3715277 at *2.  There is no "cogent and compelling" reason to revisit this holding; *see Johnson*, 564 F.3d at 99; and the Plaintiff's decision to replead this claim in the face of this holding once again calls into question counsel's appreciation for her obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

Finally, in Count Forty-Seven, the Plaintiff asserts claims under 26 U.S.C. §§ 6011, 6012, and 7203 based on Helen and Attorney Metsack's alleged failure to file income tax returns on behalf of Joan and Bob.  Again, as Judge Meyer previously explained, "the general rule [is] that '[p]rivate citizens cannot enforce the provisions of the Tax Code because '[t]hat is the duty of the Secretary of the Treasury and the Commissioner of the Internal Revenue Service, who are charged with the responsibility of administering and enforcing the Tax Code, including allegations of suspected fraud.''"  *Sechler-Hoar I*, 2018 WL 3715277, at *2 (quoting *Seabury v. City of New York*, 2006 WL 1367396, at *5 (E.D.N.Y. 2006)).  Accordingly, Judge Meyer held that the Plaintiff could not assert a claim under Section 7203, among other statutes.  *Id*.  Despite this earlier ruling, the Plaintiff brazenly reasserts a claim under Section 7203.  She offers no basis for revisiting Judge Meyer's decision in this regard, and the Court declines to do so.  *See Johnson*, 564 F.3d at 99.

Although Judge Meyer did not address Section 6011 or 6012 in his earlier ruling, the Plaintiff has failed to provide any basis for implying a cause of action under these tax code provisions, which merely set forth general requirements regarding the filing of tax returns.[13]  26 U.S.C. § 6011 ("General requirement of return, statement, or list"); 26 U.S.C. § 6012 ("Persons required to make returns of income").

For these reasons, Counts Six, Seven, and Forty-Seven are dismissed.  The Court concludes that a dismissal with prejudice is appropriate under the circumstances presented, as any effort to replead these claims will be futile.  *See Danis v. Moody's Corp.*, 627 Fed. Appx. 31, 32 (2d Cir. 2016) (summary order) (affirming dismissal with prejudice of complaint against defendant due to futility); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the Plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").

**The Defendants' Remaining Challenges Under Rule 12(b)(6)**

The Defendants have also moved to dismiss Counts Thirty-Four, Thirty-Five, Thirty-Eight, and Thirty-Nine pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[14]

*Elder Abuse Claim (Count Thirty-Four)*

In Count Thirty-Four, the Plaintiff asserts, in her capacity as the executrix of Bob's estate, civil and criminal claims for elder abuse against the Defendants pursuant to Conn. Gen. Stat. § 17b-451, *et seq.*, and Conn. Gen. Stat. § 53a-323.  The Defendants move to dismiss this count on

---

[13] In her opposition memorandum, the Plaintiff argues that she has stated a claim under 26 U.S.C. § 7434 but Count Forty-Seven does not mention Section 7434.  In any event, the Plaintiff did assert a claim under Section 7434 in the Second Amended Complaint, Judge Meyer dismissed it, and the Plaintiff has offered no reason to reconsider that holding.  *See Sechler-Hoar I*, 2018 WL 3715277, at *3.

[14] The Defendants moved to dismiss these claims in the Second Amended Complaint, but Judge Meyer did not reach the merits of that portion of the motion to dismiss because he concluded that he lacked subject matter jurisdiction over this case.

the grounds that there is no private right of action under either statute. Alternatively, they contend that the Plaintiff has failed to allege sufficient factual allegations to support her elder abuse claims.

It is axiomatic that the Plaintiff cannot assert a criminal cause of action for elder abuse in the third degree, pursuant to Conn. Gen. Stat. § 53a-323, because "Connecticut criminal laws do not provide private rights of action." *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015); *see, e.g., Desmond v. Yale–New Haven Hosp*., 138 Conn. App. 93, 98 (2012) ("Violations of § 31–290c, a criminal statute, may be prosecuted by the state's attorney, not by private individuals.."); *see also Plumb v. Griffin*, 74 Conn. 132, 50 A. 1, 2 (1901) ("Penal statutes, strictly and properly, are those imposing punishment for an offense against the state. And the expression 'penal statutes' does not ordinarily include statutes which give a private action against a wrongdoer. The words 'penal' and 'penalty,' in their strict and primary sense, denote a punishment, whether corporal or pecuniary, imposed and enforced by the state for a crime or offense against its laws." [citation omitted; internal quotation marks omitted]).

However, there is a private right of action under Conn. Gen. Stat. § 17b-451, *et seq*., a civil statutory scheme that sets forth various provisions concerning protective services for the elderly. Section 17b-462, in particular, creates a private right of action, stating:

> An elderly person who has been the victim of abuse, neglect, exploitation or abandonment . . . may have a cause of action against any perpetrator and may recover actual and punitive damages for such abuse, neglect, exploitation or abandonment together with costs and a reasonable attorney's fee. The action may be brought by the elderly person . . . or by the personal representative of the estate of a deceased elderly victim.

Conn. Gen. Stat. § 17b-462(a). The statute further states that "no cause of action for neglect or abandonment may be brought against any person who has no contractual obligation to provide care to an elderly person unless such neglect was wilful or criminal." Conn. Gen. Stat. § 17b-462(c).

Although Section 17b-462 creates a private right of action that can be pursued by the representative of an estate, the Plaintiff fails to allege a plausible violation of this statute. The Plaintiff does not allege that any of the Defendants were under a contractual obligation to care for Bob, nor do the allegations in the complaint plausibly establish that any of the Defendants neglected or abandoned Bob in a manner that was either willful or criminal. This deficiency is fatal to any claim under Section 17b-462 based on neglect or abandonment. The Plaintiff further fails to allege sufficient factual allegations to support a plausible claim that any of the defendants "abused" or "exploited" Bob within the meaning of this statutory scheme. Conn. Gen. Stat. § 17b-450(5) (defining "abuse"); Conn. Gen. Stat. § 17b-450(7) (defining "exploitation").

For these reasons, Count Thirty-Four is dismissed in its entirety. The dismissal is with prejudice. Any attempt to replead a claim under Section 53a-323 would be futile. In addition, in light of the procedural history of this case, the manifest deficiencies in the Plaintiff's complaints, the Plaintiff's failure to cure those deficiencies, and the fact that we are on the Third Amended Complaint, the Court concludes that a dismissal of the Section 17b-462 claim with prejudice is appropriate. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" [quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)]).

### Connecticut Unfair Trade Practices Act (Count Thirty-Five)

Helen and Attorney Mackasek move to dismiss Joan's claims under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.*, ("CUTPA") insofar as they were not

involved in "trade or commerce," as required by CUTPA, and because she has failed to allege sufficient factual allegations to support a CUTPA claim.[15]

"To state a claim under CUTPA, a plaintiff must plead that she (1) suffered an ascertainable loss of money or property, (2) that was caused by, (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce." *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016), *aff'd*, 666 Fed. Appx. 84 (2d Cir. 2016) (summary order); *see also* Conn. Gen. Stat. § 42-110g(a). CUTPA defines "trade and commerce" in relevant part as "the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a. Importantly, a CUTPA violation may not be alleged for activities that are not part of the defendant's primary trade or business.[16] *See DiNardo Seaside Tower, Ltd. v. Sikorsky Aircraft Corp.*, 153 Conn. App. 10, 26–27 (2014) (reiterating that CUTPA violation may not be alleged for activities that are merely incidental to a defendant's primary trade or business); *e.g.*, *Biro v. Matz*, 132 Conn. App. 272, 290 (2011) ("Because the sellers in the present case are not in the business of selling real property, CUTPA is inapplicable to the transaction in this case."); *McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 523 (2006) ("Because the defendants in this case were not in the business

---

[15] The other defendants move to dismiss Count Thirty-Five as well. Therein, Joan asserts that Patrick and Brendan violated CUTPA by asking that Bob be removed from life support. It is readily apparent that such a claim is not actionable under CUTPA and is wholly frivolous. To the extent that Count Thirty-Five asserts alternative theories of liability against the defendants not discussed in Joan's opposition memorandum, they are deemed abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("While the opponent to . . . a [dispositive] motion is free to ignore it completely, thereby risking the admission of key facts and leaving it to the court to determine the legal merits of all claims or defenses on those admitted facts, a partial opposition may imply an abandonment of some claims or defenses.").

[16] In their briefing, the parties fail to analyze the applicability of the primary business test to this case, likely because the cases they rely on pre-date the Connecticut Appellate Court's adoption of that test. Because the primary business test is binding authority, and closely related to the issues as raised and briefed by the Defendants in their motion to dismiss, the Court concludes that it may appropriately be considered when resolving the motion to dismiss.

of selling real property, and the purchase and sale agreement at issue was merely incidental to the defendants' sale and servicing of automobiles, we conclude that the court properly directed a verdict as to the plaintiffs' CUTPA count.").

The allegations in Count Thirty-Five are extremely difficult to follow and consist of reiteration of the many wrongs allegedly perpetrated by the Defendants against Joan and Bob during the course of their personal and familial relationship. Based on the Plaintiff's arguments in her opposition memorandum, however, it appears that the Plaintiff is now pursuing only two theories of liability under CUTPA. First, she alleges that certain transactions conducted by Helen and Attorney Mackasek in their capacity as trustees violate CUTPA. Second, she alleges that the excessive fees charged by Attorney Mackasek for the work he performed as an attorney for the Trust violate CUTPA.

Here, the Plaintiff cannot state a CUTPA claim against Helen and Attorney Mackasek based on the actions undertaken in their capacity as trustees. Nothing in the complaint plausibly establishes that any of the challenged transactions Helen and Attorney Mackasek engaged in as trustees are part of their primary business. Citing to *Montanaro Bros. Buildings v. Goldman*, No. CV97-0058970-S, 1998 WL 481935 (Conn. Super. Ct. July 30, 1998), the Plaintiff contends that trustees and administrators of estates can be held liable under CUTPA for their actions as a trustee or administrator. In *Montanaro*, a Connecticut superior court denied a motion to strike[17] a CUTPA claim against an executrix of an estate based on her involvement in certain settlement and contractual agreements on behalf of the estate. *Id.* at *4. Critically, the court expressly rejected the defendant's argument that she could not be held liable under CUTPA for transactions she engaged in as executrix that were not alleged to be part of her primary business. *Id.* at *3–*5. This

---

[17] A motion to strike under the Connecticut Practice Book is akin to a motion to dismiss pursuant to Rule 12(b)(6). Conn. Practice Book § 10-39.

is unsurprising because the Connecticut Appellate Court did not adopt the primary purpose test until several years after *Montanaro*.  Because the *Montanaro* court failed to apply the now binding primary business test, it is inapposite.

The Plaintiff also seeks to hold Attorney Mackasek liable for charging excessive fees while acting as an attorney for the Trust.  Attorney Mackasek's primary business is unquestionably the practice of law, and Connecticut courts have found that charging an unreasonable fee and deceptive fee practices can give rise to CUTPA liability.  *Frauenglass & Assocs., LLC v. Crawford*, No. CV11-5035301-S, 2012 WL 5278601, at \*2 (Conn. Super. Ct. Oct. 4, 2012) (unreasonable fee; misrepresentation of fees); *Kosiorek v. Smigelski*, No. CV07-4014607-S, 2008 WL 4779846, at \*3 (Conn. Super. Ct. Oct. 9, 2008) ("Unfair or excessive compensation by an attorney may be the subject of a CUTPA claim."); *Rohan v. Rosenblatt*, No. CV93-0116887-S, 1999 WL 643501, at \*7 (Conn. Super. Ct. Aug. 13, 1999) (Vertefeuille, J.) (unreasonable fee; deceptive fee practices), *supplemented*, 1999 WL 773521 (Conn. Super. Ct. Sept. 14, 1999); *see also Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Inv'rs, L.P.*, 260 Conn. 766, 781–84 (2002) (setting forth standards for CUTPA liability against attorneys).

But the Plaintiff's claim against Attorney Mackasek still fails because she has merely alleged that Attorney Mackasek charged excessive fees without alleging any factual allegations to support this claim.  Such a threadbare and conclusory allegation does not satisfy the pleadings requirements of *Iqbal*.  *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss'"); *see also Gianetti v. Neigher*, No. CV15-60253226-S, 2017 WL 5641593, at \*3 (Conn. Super. Ct. Oct. 23, 2017) (granting motion to strike

CUTPA claim based on vague allegation attorney charged excessive and unreasonable fees without references to specific incidents where defendant engaged in improper billing).

For these reasons, Count Thirty-Five is dismissed in its entirety. Under the circumstances presented, and previously discussed, the dismissal is with prejudice. *See Ruotolo*, 514 F.3d at 191; *Foman*, 371 U.S. at 182.

### Surviving Spouse Claim (Count Thirty-Eight)

In Count Thirty-Eight, the Plaintiff contends that Patrick and Brendan violated their duty to support Bob and Joan financially, as required by Conn. Gen. Stat. §§ 46b-215, 46b-216, and 53-304. Patrick and Brendan argue that each of these statutes is inapplicable to the circumstances alleged in the complaint. They further note that Conn. Gen. Stat. § 53-304 does not provide a private right of action. The Court agrees.

Section 46b-215 and Section 53-304 relate to spousal and child support orders. Patrick and Brendan plainly have no obligation under these statutes to support Bob and Joan, their father and step-mother. In addition, Section 53-304 is a criminal statute, under which there is no private right of action. *Xu*, 166 F. Supp. 3d at 207. These claims are patently frivolous.

Section 46b-216 is Connecticut's surviving spouse statute. Under Section 46b-216, the recipient of a portion of an "estate of any person dying without issue" can be held liable to contribute support to the decedent's "poor" surviving spouse, provided "there is no person or persons of sufficient ability . . . to provide support." The Plaintiff has failed to allege a plausible violation of this statute. Bob did not die without issue, there is no allegation that Patrick and Brendan received anything from Bob's estate, and the Plaintiff acknowledges that they were not

named as beneficiaries under Bob's will.  Add to this matrix the acknowledged fact that Bob's estate is insolvent, and this claim becomes manifestly frivolous as well.[18]

Accordingly, Count Thirty-Eight is dismissed in its entirety.  The dismissal is with prejudice because any effort to replead would be futile.

### *Consumer Contract Claim (Count Thirty-Nine)*

In Count Thirty-Nine, Joan alleges that the Defendants have violated Connecticut's consumer contract statute, Conn. Gen. Stat. § 42-151, *et seq.*  The Defendants move to dismiss this count because the Plaintiff fails to satisfy any of the requirements for stating such a claim.  The Court struggles to identify any good faith basis for asserting this claim.

Under Connecticut law, a "creditor, seller or lessor" who fails to comply with the statutes governing consumer contracts can "be liable to a consumer who is a party to the consumer contract."  Conn. Gen. Stat. § 42-154.  "A 'consumer' is an individual who borrows, leases, buys or obtains money, property or services under a written agreement."  Conn. Gen. Stat. § 42-151(a).  A "consumer contract" is a "written agreement" that contains certain specified provisions.  Conn. Gen. Stat. § 42-151(b).

The Plaintiff's claim is based principally on the "credit," "property," and "services" Joan purportedly provided to the Defendants "in the ordinary course of business in caring for Bob R. Hoar."[19]  (Third Amended Compl. at ¶¶ 482–85.)  Although there are many, the principle and perhaps most obvious reason this claim fails is because, as pled, the Defendants, not the Plaintiff, are the "consumer" for whom statutory protection and a cause of action is afforded.  *See* Conn.

---

[18] Joan does allege that the Trust passed to Patrick and Brendan after their father's death.  But neither the Trust nor its assets, in which Bob only ever had a life interest, are part of Bob's estate.  In addition, the Plaintiff argues in her opposition memorandum that she can recover under Section 46b-216 on behalf of Bob's estate based on Patrick's and Brendan's inheritance under Gladys' will.  This argument is equally specious.

[19] The Plaintiff argues that the e-mail exchanges she had with the Defendants concerning Bob's care and their expenses qualify as consumer contracts.  She further suggests that Gladys' will is a consumer contract to the extent it defines the terms of the Trust.

Gen. Stat. § 42-154 ("Any creditor, seller or lessor which fails to comply with section 42-152 shall be liable to a consumer who is a party to the consumer contract for statutory damages. . . ."). In addition, the Court has already rejected the conclusory assertion that the Defendants employed Joan as Bob's caretaker, regardless of whether the Plaintiff was the provider of credit, property, or services and the Defendants the purported "consumer" thereof.

The Plaintiff also asserts a violation of Connecticut's consumer contract statute based on the Defendant's leasing of the Condo to her "for life." (Third Amended Compl. at ¶ 486.) The Plaintiff does not allege that she entered into any written contracts with any of the Defendants concerning the lease of the Condo, nor has she alleged how her purported lease violates Connecticut's consumer contract statute.

For these reasons, Count Thirty-Nine is dismissed. Under the circumstances previously discussed, and because any effort to replead will likely be futile, the dismissal is with prejudice. *See Ruotolo*, 514 F.3d at 191; *Foman*, 371 U.S. at 182.

**Conclusion**

For the reasons set forth in this decision, the Motions to Dismiss [ECF Nos. 116–118] are GRANTED in part and DENIED in part. The following Counts are dismissed with prejudice:

- Counts One and Three to the extent that they assert claims against Gladys' estate;
- Counts Six, Seven, Eight, Nine, Twenty-Three, Thirty-Four, Thirty-Five, Thirty-Eight, Thirty-Nine, Forty-Four, and Forty-Seven in their entirety.

The Court further strikes Paragraphs 1 and 9 of the Request for Relief of the Third Amended Complaint. The Clerk of the Court is directed to terminate the Estate of Gladys G. Hoart and the

Trust u/w of Gladys G. Hoart, f/b/o Bob R. Hoar, as defendants in this action.[20]  The Motions to Dismiss are denied in all other respects.

Some closing observations.  The Third Amended Complaint and the Plaintiff's opposition to the motion to dismiss raise serious concerns regarding plaintiff's counsel's compliance with the requirements of Rule 11(b).  Judge Meyer previously determined that some of the Plaintiff's claims were devoid of merit and "beyond implausible."  *Sechler-Hoar I*, 2018 WL 3715277, at *1.  Here again, and as discussed above, some of the claims and arguments raised by the Plaintiff are patently frivolous.  It is therefore difficult to see how these pleadings do not squarely implicate the concerns at the heart of Rule 11(b).  **The Plaintiff and her counsel are on notice that further specious or frivolous claims and arguments may well result in the imposition of sanctions pursuant to Rule 11(c)(3).**

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of January 2020.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[20] The allegations are too convoluted to discern which of the forty-seven counts are actually directed at Glady's estate and the Trust.  Regardless the theory of liability, any recovery would necessarily involve the exercise by this Court of control over the assets of Glady's estate or the Trust, which, as discussed above, is prohibited by the probate exception.